**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Michael Lance CARVIN,
Defendant-Appellant.**

**No. 76–3570
Summary Calendar.\***

United States Court of Appeals,
Fifth Circuit.

July 18, 1977.

Rehearing Denied Aug. 10, 1977.

---

\* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Ray Sandstrom, Fort Lauderdale, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Barbara E. Vicevich, Special Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before THORNBERRY, RONEY and HILL, Circuit Judges.

THORNBERRY, Circuit Judge:

A jury in the Southern District of Florida convicted Michael Lance Carvin, appellant, of violations of 18 U.S.C. §§ 245, 871(a), 875(a), and 876. The jury acquitted appellant of violating 18 U.S.C. § 111, impeding the Secret Service Agents while they were engaged in the performance of their duties. The activities found to be violations included making oral telephone threats against the lives of President Gerald R. Ford, Vice-President Nelson Rockefeller, and Presidential Candidate Ronald Reagan; attempting to intimidate and interfere with Ronald Reagan during Reagan's campaigning by aiming an authentic-looking toy gun at Reagan; and using the mails to threaten the same three individuals. The judge sentenced appellant to four and one-half years in prison for the telephone threats (three terms, to be served concurrently), one year for impeding Reagan's campaigning, served consecutively to the four and one-half year term, and three four and one-half year terms for the letter threats, to be served concurrently with each other and consecutively with the one-year term. Appellant brings forward seven alleged points of error. We affirm.

First, appellant claims that the court erred in not dismissing the second (su-

perseding) indictment. Appellant focuses on several aspects. He maintains that the letter did not contain an actual threat, but only a crude, offensive way of stating political opposition. The words of the letter, considered in the light of the context in which it was written, clearly contain a threat. *Watts v. United States*, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664; *United States v. Maisonet*, 484 F.2d 1356 (4 Cir. 1973).

■ Appellant's second contention with regard to his first issue is that the indictment was defective in that it charged three offenses for the telephone call and three for the letter. Appellant cites the "rule of lenity" announced in *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), in this and his seventh point. There, the Court held that the transportation of two women on the same trip and in the same vehicle in violation of the Mann Act constituted a single offense. *Bell* is no help to appellant in this case. The Court in *Bell* expressly noted the dearth of legislative history, but that is no problem here. As the court in *Roy v. United States*, 416 F.2d 874 (9 Cir. 1969), notes, one of the evils aimed at was the detrimental effect upon activity and movement that may result from a threat on one's life. Thus, three people in the instant case suffered a detrimental effect on their movement because of the one letter, and one phone call. In any event, the trial judge issued concurrent sentences for the three counts arising out of the letter, and the three counts arising out of the phone call. This removed any possible error. *See, e. g., Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *United States v. Works*, 526 F.2d 940 (5 Cir. 1976).

■ Still with regard to his first issue, appellant insists that the count concerning impeding Reagan's campaign did not track the statute. All that is required, however, is that the count adequately inform defendant of the offense he has been charged with. *See, e. g., United States v. Constant*, 501 F.2d 1284 (5 Cir. 1974).

■ Finally, appellant claims that the Agents should not have arrested him for a violation of 18 U.S.C. § 245 without prior permission from the Attorney General. While permission from the Attorney General is necessary before prosecution under that section, it is clear that the Agents arrested him for what they thought he was doing—attempting to kill Ronald Reagan with a real gun. Further, the Attorney General sent permission to prosecute some nine weeks before the initial (not superseding) indictment was returned.

■ Second, appellant maintains that the trial court erred in not suppressing certain statements, since the Agents were not in uniform and he did not realize he was under arrest. Clearly there was probable cause for arrest. *See United States v. Maslanka*, 501 F.2d 208 (5 Cir. 1974). And it is not necessary that the defendant know that the men who subdued him were federal officers. *See United States v. James*, 5 Cir., 528 F.2d 999, *reh. denied*, 532 F.2d 1054 (5 Cir. 1976); *United States v. Irick*, 497 F.2d 1369 (5 Cir. 1974). Appellant received *Miranda* warnings four times, and there was no undue delay in bringing appellant before the Magistrate at 10 a. m. the next day, per the Magistrate's request.

■ Third, there is no merit to the appellant's contention that the district court should have suppressed the items taken from his car. When appellant discovered he had to spend the night in jail, he told the Agents to move his car and described how to enter it without a key. This was voluntary, uncoerced consent. *See, e. g., Weeks v. Estelle*, 509 F.2d 760 (5 Cir. 1975); *United States v. Horton*, 488 F.2d 374 (5 Cir. 1973).

■ Fourth, appellant has no ground to complain that the trial court quashed his subpoena of Ronald Reagan. The court granted a continuance on March 1, that same day setting the trial for April 5. Yet appellant waited until the morning of the trial to subpoena Reagan. In any event, Reagan's testimony was not needed on either of the two points appellant demanded

him for. First, appellant was charged with attempting to intimidate, so it did not matter if Reagan was not really intimidated. Second, there was enough other evidence to show that Reagan was a candidate as of November 20, 1975, including the testimony of Reagan's campaign manager.

■ Appellant foreclosed the fifth issue by not raising an objection at the time of trial. In any event, it was not error for the judge to instruct the jury, upon receipt of their question of the method for filling in the verdict, that if they had a reasonable doubt about appellant's sanity, they should find him not guilty, and that if they had no reasonable doubt about his sanity, they should then consider whether the government has proved beyond all reasonable doubt appellant's specific intent to commit the offenses charged. There was nothing prejudicial in this instruction, especially since it is apparent that the jury had already reached a verdict.

The sixth issue concerns the sufficiency of the evidence. Viewed in the light most favorable to the government and the jury verdict, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Black*, 497 F.2d 1039 (5 Cir. 1974), there was substantial evidence to sustain the verdict.

Appellant's final point involves the sentences imposed by the court, which he claims are unlawful in light of *Bell*'s "rule of lenity". As discussed before, not only is *Bell* distinguishable from this case, but we can affirm these sentences on the basis of the concurrent sentence doctrine.

Accordingly, we AFFIRM.